UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Daniel Perry Locke</u>

   v.                                            Case No. 16-cv-57-SM

<u>Carolyn W. Colvin, Acting</u>
<u>Commissioner, Social</u>
<u>Security Administration</u>


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Daniel Locke moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings.


**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS,

955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 13, is part of the court's record and will be summarized here, rather than repeated in full.

Locke worked as a collision repair technician until April 15, 2012, the date on which he claims to have become disabled. He applied for Social Security disability insurance benefits ("DIB") about three months later, claiming that he was unable to work due to "[p]eripheral neuropathy from diabetes, loss of balance [and] numbness, burning, tickling in fingers and feet."

Administrative Transcript (hereinafter "Tr.") 163. He has been diagnosed with diabetes mellitus and peripheral neuropathy.[1]

About three months after Locke applied for DIB, he was examined by Dr. John Fothergill. Thereafter, Dr. Fothergill wrote a narrative that includes the following relevant observations:

> [H]e states that that he cannot drive for longer than 30 minutes because holding the steering wheel become impossible. . . . With respect to lifting things certainly he cannot do what he used to do. He has a significant problem because he just cannot feel what he is holding and he's dropped things, the weight itself is not necessarily a problem. Carrying is also limited because of problems with his hands and feet.

Tr. 282-83.

About a week after Locke saw Dr. Fothergill, Locke's residual functional capacity ("RFC")[2] was assessed by Dr. Burton Nault, a state-agency physician who reviewed his medical records. Dr. Nault opined: "There are no exertional (lifting, carrying walking, standing, sitting, pushing, or pulling) or non-exertional (postural, manipulative, visual, communicative,

---

[1] Neuropathy is "a disease involving the cranial nerves or the peripheral autonomic nervous system." Stedman's Medical Dictionary 1313 (28th ed. 2006).

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

or environmental) limitations." Tr. 56.

In February of 2014, Locke was seen by Dr. Gregory White of the U.S. Department of Veterans Affairs, who examined him and completed a form titled "Diabetic Sensory-Motor Peripheral Neuropathy Disability Benefits Questionnaire." On that form, Dr. White: (1) reported the results of a neurologic exam;[3] and (2) characterized the severity of Locke's upper and lower extremity neuropathy. He concluded with the following description of the functional impact of Locke's neuropathy:

> [V]eteran had to leave his job as an auto/auto body mechanic around May 2012 due to inability to manipulate small parts such as screws, clips and wires with both hands, largely because he could not feel them well. Also he had difficulty using tools for both finely coordinated work and also for work requiring gross hand strength or prolonged grasping. Also due to lower extremity neuropathy he had difficulty standing for long periods of time that was frequently required on that type of job. These impairments in strength and coordination and inability to adequately sense objects held in the hands would carry over to potential other jobs requiring these abilities.

Tr. 383.

Finally, in March of 2014, Dr. Bruce Latham, a physician

---

[3] Dr. White's neurologic exam included assessments of Locke's strength, his deep tendon reflexes, light touch/monofilament testing, position sense, and vibration sensation.

who had seen Locke once before, completed a Physical Impairment Medical Source Statement on Locke.  With regard to manipulative limitations, Dr. Latham opined that Locke had no capacity for fine manipulation, but could grasp, turn, and twist objects with each hand for five percent of an eight-hour working day, and could reach with each arm for five percent of an eight-hour working day.

After the Social Security Administration denied Locke's application for benefits, he received a hearing before an Administrative Law Judge ("ALJ").  Subsequently, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: Diabetes Mellitus Type II and alcohol use disorder (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is to avoid tasks requiring fine fingering.

> . . . .
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> . . . .
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

Tr. 19, 20, 22, 27. Without taking testimony from a vocational expert ("VE"), without providing any explanation, and without identifying any evidence, the ALJ concluded that Locke's nonexertional limitation, i.e., his need "to avoid tasks requiring fine fingering," Tr. 22, had "little or no effect on the occupational base of unskilled work at all exertional levels," Tr. 28.

### III.  Discussion

#### A.  The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Locke

7

was not under a disability from April 15, 2012, through July 23, 2014, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

**B.  Locke's Claims**

Locke claims that the ALJ erred by: (1) using her own lay knowledge to determine his RFC; (2) failing to properly consider his neuropathy; (3) mishandling the medical opinion evidence; and (4) failing to support her Step 5 determination with

9

evidence from a vocational expert.  The court can discern no grounds for remand arising from the manner in which the ALJ determined claimant's RFC, considered his neuropathy, or considered the medical opinions.  However, Locke's fourth claim is meritorious and dispositive.

Magistrate Judge Rich has recently characterized the law of this circuit regarding an ALJ's authority to rule against a claimant, at Step 5, without taking testimony from a VE:

> The Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level.  Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).  "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident."  Seavey v. Barnhart, 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

Parker v. Colvin, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6 (D. Me. Sept. 19, 2016).  With regard to the ALJ's obligation to support a finding of negligible effect, Judge Telesca has explained: "If the ALJ chooses to proceed without vocational expert testimony, the ALJ 'must provide a similar degree of specificity to achieve the underlying objectives of procedural

fairness to the claimant and preservation of an adequate record for review.'" Solsbee v. Astrue, 737 F. Supp. 2d 102, 116 (W.D.N.Y. 2010) (quoting Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981)). Finally, as Judge Barbadoro has observed, "[t]he First Circuit has cautioned that 'an ALJ typically should err on the side of taking vocational evidence when a [non-exertional] limitation is present in order to avoid needless agency rehearings.'" Brindley v. Colvin, No. 14-cv-548-PB, 2016 WL 355477, at *5 (D.N.H. Jan. 29, 2016) (quoting Ortiz, 890 F.2d at 528) (remanding where ALJ neither called vocational expert nor explained why reliance upon the Grid was appropriate, but "merely stated, without explanation or citation to record evidence, that [the claimant's] non-exertional limitations have little or no effect on the occupational base of unskilled light work") (internal quotation marks and citation to the record omitted).

Here, the ALJ included the following non-exertional limitation in Locke's RFC: "the claimant is to avoid tasks requiring fine fingering." Tr. 22. Given the ALJ's failure to explain, or identify evidence to support, her determination that Locke's nonexertional limitation had "little or no effect on the occupational base of unskilled work at all exertional levels,"

Tr. 28, she was permitted to rule against Locke at Step 5, without taking evidence from a VE, only if it is self-evident that the limitation she ascribed to him would have a negligible effect upon a person's ability to perform the full range of unskilled jobs. It is not self-evident that Locke's limitation had only a negligible effect on his ability to perform the full range of unskilled jobs at all exertional levels.

In Grover v. Colvin, No. 2:15-cv-204-JHR, 2016 WL 183645 (D. Me. Jan. 14, 2016), the ALJ, like the ALJ in this case, did not take testimony from a VE, but made a Step 5 determination in reliance on the Grid. She did so despite determining that the claimant

> was limited to simple jobs with simple instructions, needed to avoid all exposure to temperature extremes and concentrated exposure to fumes, odors, dust, gases, and poor ventilation, was precluded from performing fine work with her hands due to her essential bilateral upper extremity tremor, could not climb ladders, ropes, or scaffolds, and needed to avoid exposure to hazards such as unprotected heights and moving machinery.

Id. at *1 (emphasis added).

The Acting Commissioner in Grover defended the ALJ's decision not to take testimony from a VE on these grounds:

> [B]ecause the plaintiff was found capable of performing work at the medium, heavy, and very heavy exertional levels, her inability to perform work necessitating fine manual dexterity "can safely be

> assumed to not significantly erode her access to work at those levels — although the same might not be the case had the ALJ found her limited to only light or sedentary work."

2016 WL 183645, at *4.

Judge Rich was not persuaded. First, he agreed with the claimant that the ALJ failed to "demonstrate that the plaintiff's combination of impairments had only a negligible impact on the occupational base." Grover, 2016 WL 183645, at *3. He then elaborated:

> Seavey makes clear that the commissioner cannot assume that nonexertional limitations have only a negligible effect on the relevant occupational base: she must back such a finding "with the evidence to substantiate it, unless the matter is self-evident." Seavey, 276 F.3d at 7 (citation and internal quotation marks omitted). As the plaintiff's counsel emphasized at oral argument, his client was found to have a complete preclusion against fine work with the hands. <u>The degree to which such a limitation would erode the occupational base for even medium, heavy, and very heavy work is not self-evident</u>, particularly given that . . . SSR 85-15 indicates that even reaching and handling require some degree of fine usage of the hands.
>
> In the absence of vocational testimony clarifying the extent to which the plaintiff's combined nonexertional impairments eroded the occupational base . . . her Step 5 finding was unsupported by substantial evidence, necessitating remand.

Id. at *4-5 (emphasis added) (citing Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A. 1985)); cf. Rosalia v. Colvin, No. 2:15-cv-0184-CKD, 2016 WL 29597, at *6 (E.D. Cal.

Jan. 4, 2016) (ruling that limitation to "frequent bilateral handling and fingering" did not preclude reliance on the Grid to determine that claimant was capable of performing nearly full range of medium work) (emphasis added); Johnson v. Colvin, No. 13-23235-CIV-ALTONAGA/Simonton, 2015 WL 12533115, at *3 (S.D. Fla. Mar. 19, 2015) (ruling that ALJ permissibly relied on the Grid where claimant could not use left hand for fingering and ALJ explained that the claimant's "nonexertional impairment did not significantly erode the occupational base of light work because, as explained by Social Security Ruling 83-14, many unskilled light jobs do not entail fine use of the fingers [but] require gross use of the hands to grasp, hold, and turn objects"); but see Evans v. Astrue, No. 4:11CV1198 CDP, 2012 WL 4357916, at *5 (E.D. Mo. Sept. 24, 2012) (ruling that ALJ permissibly ruled against claimant at Step 5, without calling vocational expert, where claimant was "capable of engaging in medium work . . . with the caveat that she must avoid work involving fine motor movements").

    Here, a remand is necessary because the ALJ's Step 5 determination was not supported by substantial evidence, due to the lack of VE testimony. As between Grover and Evans, this court is persuaded by the reasoning of Grover; it is not self-

evident that claimant's inability to perform fine fingering would "have little or no effect on the occupational base of unskilled work at all exertional levels" Tr. 28.  Moreover, neither Rosalia nor Johnson supports a contrary result.  Unlike the claimant in Rosalia, who was capable of frequent bilateral fingering and handling, Locke was given an RFC that completely precluded fine fingering.  And unlike the ALJ in Johnson, who explained why an inability to perform fingering with one hand did not erode the relevant occupational base, the ALJ in this case merely concluded, without explanation or evidence, that Locke's limitation did not erode the relevant occupational base.  In sum, the reasoning of Grover, in conjunction with the First Circuit's caution that "an ALJ typically should err on the side of taking vocational evidence when a [non-exertional] limitation is present," Brindley, 2016 WL 355477, at *5, convinces this court that the limitation in Locke's RFC required the ALJ to call upon a vocational expert at Step 5, and that her failure to do so necessitates a remand.

### IV.  Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 12,

should be denied; Locke's motion to reverse that decision, document no. 9, should be granted; and this matter should be remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court should be directed to enter judgment and close this case.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

November 2, 2016

cc:  Laurie Smith Young, Esq.
     T. David Plourde, Esq.